# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) | Case No. 1:20-CV-00454-CLM
| UNITED WAY OF EAST CENTRAL ALABAMA, | ) ) ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

An Anniston public water main ruptured, releasing water that damaged the property of Defendant United Way of East Central Alabama ("United Way"). Plaintiff Auto-Owners Insurance Company ("Auto-Owners") insured United Way's damaged property at the time.

Auto-Owners sued United Way, seeking a declaration that United Way's policy did not cover the damage (doc. 1). United Way cross-sued Auto-Owners, seeking a declaration that its policy covered the damage (doc. 6). The parties have filed cross motions for judgment on the pleadings (docs. 13, 16). For the reasons detailed within, the court finds that United Way's policy covered the damage, so United Way's motion is due to be **GRANTED** and Auto-Owners' motion is due to be **DENIED**.

## FACTS AND PROCEDURAL HISTORY

An Anniston water main burst on February 21, 2020. Doc. 14 at 4. Water released from the ruptured main flowed across a parking lot and into United Way's building through the back walkway door and garage door. Water damage ensued.

Auto Owners provided United Way businessowner's insurance at the time. United Way filed a claim, which Auto-Owners denied because, in Auto-Owners' opinion, "the property damage is excluded by the Policy's water damage exclusion." This lawsuit followed. *See* Doc. 1 (Auto-Owner's complaint); Doc. 6 (United Way's Answer and Countercomplaint).

## STANDARD OF REVIEW

Rule 12(c) allows a party to move for judgment after the pleadings are closed but early enough not to delay trial. "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach,* 250 F.3d 1299, 1301 (11th Cir. 2001); *see Bank of New York Mellon v. Estrada,* 2013 U.S. Dist. LEXIS 102069, (N.D. Ill. July 22, 2013) ("A Rule 12(c) motion for judgment on the pleadings is 'designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice'").

The court analyzes Rule 12(c) motions for judgment on the pleadings like Rule 12(b)(6) motions to dismiss. *Griffin v. SunTrust Bank, Inc.,* 157 F. Supp. 3d 1294, 1295 (N.D. Ga. 2015). So to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In general, a district court should not look outside the complaint in a motion to dismiss or for judgment on the pleadings, but it may consider documents attached to a defendant's motion if those documents are "relationship-forming contracts [that] are central to a plaintiff's claim." *SFM Holdings, Ltd. v. Banc of Am.* Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); *Harris v. Ivax Corp.,* 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.").

## STATEMENT OF LAW: INSURANCE CONTRACTS

This diversity jurisdiction case was filed under state law, so the court applies Alabama state law as it interprets United Way's insurance policy.

In Alabama, "[i]nsurance contracts are subject to the same general rules applicable to other written contracts…" *Am. & Foreign Ins. Co. v. Tee Jays Mfg. Co.*, 699 So.2d 1226, 1228 (Ala. 1997). A court does not consider the language of the policy in isolation; it must consider "the policy as a whole." *Porterfield v.*

*Audubon Indem. Co.*, 856 So. 3d 1203, 1209 (Ala. 2009). An insurance policy should be read how an ordinary person would interpret it, not how a lawyer would read it. *St. Paul Fire & Marine Ins. Co. v. Edge Memorial Hosp.*, 584 So.2d 1316, 1322 (Ala. 1991). This means that the court does not look for what the insurer intended but to what a reasonably prudent person applying for insurance would assume. *See W. World Ins. Co. v. City of Tuscumbia*, 612 So.2d 1159, 1161 (Ala. 1992). "Further, this Court has ruled that exceptions to coverage must be interpreted as narrowly as possible to provide the maximum coverage available." *Sullivan v. State Farm Mut. Auto. Ins.*, 513 So.2d 992, 994 (Ala. 1987). When exclusions are ambiguous, they "are to be construed most strongly against the insurance company that drafted and issued the policy." *Cincinnati Ins. Co. v. Lee Anesthesia, P.C.*, 641 So. 2d 247, 249 (Ala. 1994).

## **ANALYSIS**

The parties agree that United Way's policy covers the damage to its building and business personal property unless the ruptured water main incident fits within Section B.1(g) of the policy, which excludes certain "water" damage. At the time of the incident, Section B.1(g) read:

1. We will not pay for loss of damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes currently or in any sequence to the loss.

> g. Water
>
> (1) Regardless of the cause, **flood**, **surface water**, waves, tides, tidal waves, storm surge, overflow of any body of water, or their spray, all whether driven by wind or not;
>
> (2) Mudslide or mudflow;
>
> (3) Water that backs up from a sewer or drain; or
>
> (4) **Water under the ground surface pressing on, or flowing or seeping through**:
>
>   (a) Foundations, walls, floors or paved surfaces;
>   (b) Basements, whether paved or not; or
>   (c) **Doors, windows, or other openings**.
>
> But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting loss or damage.

Doc. 1-1 at 31 at 49-50 (original §B.1); 31 (changes to §B.1(g)) (emphasis added). Auto-Owners contends that the emphasized provisions describe the cause of United Way's damage and thus exclude coverage. The court analyzes each below.

### A. Paragraph B.1(g)(1): Flood or surface water, regardless of cause

Auto-Owners' primary argument is that the water that damaged United Way's property was "flood" or "surface water." The policy defines neither term, so the court must read the policy as a whole to determine how a reasonable person applying for insurance would understand those terms—not how Auto-Owners intended them to be understood. *See W. World Ins. Co.*, 612 So.2d at 1161; *St. Paul Fire & Marine Ins. Co.*, 584 So.2d at 1322.

<u>The parties' positions, generally</u>: United Way contends that a reasonable person understands terms like "flood, surface water, waves, [and] tides" to have natural origins that don't include man-made causes like ruptured pipes. As United Way puts it, "when *the Anniston Star* tweets that there is a 'flash flood' warning for Calhoun County, citizens are concerned with high rainfall and accumulation, not the threat of spontaneously bursting pipes or rupturing public water mains." Doc. 14 at 8. United Way cites dictionary definitions, insurance treatises, and caselaw from other States to back its position.

Auto-Owners counters that, even if United Way is correct that a reasonable person generally understands terms like "flood, surface water, waves, [and] tides" to have natural origins, adding the introductory clause "[r]egardless of the cause" expanded the scope of those terms. Put simply, the ruptured water main caused the "flood" or "surface water" that, in turn, caused the damage, so there is no coverage.

To be sure, the introductory clause means what it says; a "flood" is a "flood," no matter what caused it. But that still requires a reasonable person to consider the water as "flood" or "surface water." If water that escapes from a ruptured water main never becomes "flood" or "surface water" before damaging property, then the cause of the water's escape is irrelevant. And, as explained below, the court agrees with United Way that the water that escaped Anniston's water main was neither "flood" nor "surface water" when it flowed through United Way's doors.

Associated terms: Before the court defines "flood" and "surface water" individually, the court notes that the collective list of terms in Paragraph B.1(g)(1) suggests a definition about natural water phenomena, not man-made systems. Each term that follows flood and surface water—*i.e.*, "waves, tides, tidal waves, storm surge, overflow of any body of water"—has a natural connotation. So the Associated Words canon of construction (or *noscitur a sociis*) dictates that the terms "flood" and "surface water" also be given a natural connotation. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012).

A leading insurance treatise agrees that grouping terms like flood, surface water, and tides in a policy connotes a natural versus man-made distinction:

> A policy may cover or exclude various natural water-related forces, such as tidal waves, rain, flood, surface water, and subsurface water. Because exclusions are read narrowly, a policy excluding damage from some natural water-related perils may cover damage from other natural water phenomena. Therefore, the definition and scope of the various terms is often disputed.
>
> Damage from natural water-related forces is distinct from 'water damage'. Generally, 'water damage' means water damage from plumbing systems. However, a policy may exclude 'water damage' and define it as damage from natural water phenomena. Provisions excluding damage from natural water-related perils preclude recovery for damage from natural causes, not from man-made systems. The policy's language may indicate whether an exclusion applies to water damage from natural water phenomena or man-made systems. The distinction between water damage from natural forces and water damage from artificial forces may be a source of dispute.

Steven Plitt, *et al.*, *Couch on Insurance, Third Ed.*, 11 Couch on Ins. § 153:48.

United Way's policy contains such a distinction. In the "property definitions" section, the policy lists "water damage" as a "specified cause of loss." Doc. 1-1 at 62 (Policy §H.4). "Water damage" is then defined as "accidental discharge or leakage of water or steam as the direct results of the breaking or cracking of any part of a system or appliance containing water or steam." *Id.* (Policy §H.4(c)). Or, as *Couch on Insurance* puts it, "'water damage' means water damage from plumbing systems." 11 Couch on Ins. § 153:48. While this clause does not define "flood" or "surface water," and thus does not answer the present question, it supports United Way's argument that each of the B.1(g)(1) terms of exclusion connote natural phenomena, not the failure of man-made systems. *Id.*

<u>"Flood" defined</u>: Along with the presumption described above, the court finds that the water that entered United Way's property was not a "flood" based on a common understanding of the word (*e.g.*, dictionary definitions), the insurance industry's understanding of the word, and caselaw that interprets the same provision.

As for common understanding, Merriam-Webster defines flood to mean "a rising and overflowing of a body of water especially onto normally dry land." *Flood*, Merriam-Webster Online Dictionary (2020), http://www.merriam-webster.com/ dictionary. Black's Law defines flood to mean "[a]n overflowing of water into an area normally dry; esp., the uncontrollable inundation by surface waters of an area that would not ordinarily be expected to be so affected." *Flood*, Black's Law

Dictionary (11th ed. 2019). Both sources support United Way's position that a reasonable person understands "flood" to mean that a body of water overflowed onto dry land—not that a water main burst and spewed water over a parking lot.

The insurance industry defines flood the same way. *Couch on Insurance* defines "flood" as "the overflow of some body of water that inundates land not usually covered with water." 11 Couch on Ins. § 153:54. *Couch* then answers the question presented here: "if the inundation does not arise from the overflow of a body of water, as when a water main breaks, the event is not a flood." *Id.*

The federal statutes and regulations that create and define the National Flood Insurance Program (NFIP) also define floods as the overflowing of a body of water. The NFIP defines "flood" to "have such meaning as may be prescribed in regulations of the Administrator, and may include inundation from rising raters or from the overflow of streams, rivers, or other bodies of water, of from tidal surges, abnormally high tidal water, tidal waves, tsunamis, hurricanes, or other severe storms of deluge." 42 U.S.C. § 4121(a)(1). The associated regulations then define "flood or flooding" to mean:

> (a) A general and temporary condition of partial or complete inundation of normally dry land areas from:
>
> (1) The overflow of inland or tidal waters.
>
> (2) The unusual and rapid accumulation or runoff of surface waters from any source.

> (3) Mudslides (i.e., mudflows) which are proximately caused by flooding as defined in paragraph (a)(2) of this definition and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water and deposited along the path of the current.

44 C.F.R. §59.1. The statute and regulations do not appear to consider water that escapes a ruptured water main to be a flood.

Finally, both parties cite caselaw that they claim support their position. But the case most on-point, *Comley v. Auto-Owners Ins. Co.*, 563 S.W.3d 9 (Ky. 2018) supports United Way.[1] The facts in *Comley* are nearly identical to our facts: a public water main burst; the escaped water flowed into the policyholder's basement; and, Auto-Owners denied the claim based on a virtually identical exclusion clause—*i.e.*, "regardless of the cause, flood, surface water, waves, tidal water, storm surge, or overflow of a body of water." *Id.* Relying on the same provisions of *Couch on Insurance* that this court quotes above, the Kentucky Supreme Court ruled 5-2 that the term "flood" excluded "natural water phenomena" from coverage, and "[w]hat happened here—a public water main line bursting—is not a natural water phenomenon." *Id.* at 11.

---

[1] Similar reasoning and results can be found in *Sosa v. Massachusetts Bay Ins. Co.*, 206 A.3d 1011 (N.J. 2019*); In re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007); *Popkin v. Sec. Mut. Ins. Co. of New York*, N.Y.S. 2d 492 (1975); and *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678 (Colo. 1989). Auto-Owners' primary case, *Hall v. Am. Idem. Group*, 648 So.2d 556 (Ala. 1994), is not helpful because the Alabama court did not interpret the word "flood." Instead, the court determined whether a subsurface exclusion applied to damage caused by "water leakage that continued over a period of years and by the sudden burst in the water line." *Id.* at 559.

For all of these reasons, the court finds that water that escapes from a ruptured water main and flows across a parking lot is not a "flood" as that term is used in the policy. Because the water that damaged United Way's property was never a "flood," the introductory clause "[r]egardless of the cause" is irrelevant. *See id.* at 12 ("Even though the enumeration of events excluded from coverage is preceded by 'regardless of the cause,' the event must still be a 'flood' for the exclusion to apply.").

"Surface water" defined: The court starts with a presumption that "surface water" comes from a natural source, not a man-made system, because the other terms in the exclusion—*i.e.*, "waves, tides, tidal waves, storm surge, overflow of any body of water"—have a natural connotation. *See* Scalia *Reading Law* at 195 (Associated Words canon). And the same sources that supported a natural, rather than man-made, origin for "flood" support the same result for "surface water."

As for general understanding, Merriam-Webster defines "surface water" as "natural water that has not penetrated much below the surface of the ground; drainage water." *Surface water*, Merriam-Webster Online Dictionary (2020), *supra*. Black's Law Dictionary defines "surface water" as "[w]ater lying on the surface of the earth but not forming part of a watercourse or lake. Surface water most commonly derives from rain, springs, or melting snow." *Flood*. Black's Law Dictionary (10th ed. 2014). Both definitions talk about water from natural sources, not water that escapes from man-made systems.

The insurance industry imposes the same limitation. *Couch on Insurance* describes "surface water" as a "natural water-related force," 11 Couch § 153:48, and says that "[t]ypically, surface water is created by rain or other precipitation." *Id.* §153:48. *Insurance Law and Practice* similarly describes "surface water" as:

> water which is derived from falling rain or melting snow, or which rises to the surface in springs, and is diffused over the surface of the ground while it remains in such diffused state, and which follows no defined course or channel, which does not gather into or form a natural body of water, and which is lost by evaporation, percolation, or natural drainage.

5 J.A. Appleman & J. Appleman, Insurance Law and Practice § 3145 at 463 (1970).[2]

Finally, Auto-Owners made the same "surface water" argument to the Kentucky Supreme Court in *Comley*, and that court rejected it. *See Comley*, 563 S.W. 3d at 12 (relying on *Couch on Insurance* and Black's Law Dictionary to find that water from a water main line "cannot constitute 'surface water'").

For all of these reasons, the court finds that water that escapes from a ruptured water main and flows across a parking lot into an adjacent building is not "surface water" as that term is used in the exclusions provision. Because the water that damaged United Way's property was never "surface water," the introductory clause "[r]egardless of the cause" is irrelevant. *See id.* at 12 ("Here, the water causing

---

[2] The Eleventh Circuit used this definition of surface water when reviewing a Georgia insurance policy. *See Williams v. State Farm Fire and Cas. Ins. Co.*, 581 Fed. Appx. 733, 735 (11th Cir. 2014).

damage came from a 'watercourse,' *i.e.*, a water main line, so the water causing damage here cannot constitute 'surface water,' making application of the 'regardless of the cause' modifier irrelevant.").

* * *

In short, the court finds that a reasonable, ordinary person shopping for insurance would not assume or believe that water that escapes from a ruptured wain main and flows across a parking lot is "flood" or "surface water." The court also finds that these terms are not ambiguous once you consider the other terms in the B.1(g)(1) "water" exclusion, as well as dictionaries and insurance treatises.

At best, Auto-Owners can plausibly argue that the terms are ambiguous because the Kentucky Supreme Court split 5-2 when it applied the same terms to the same facts—*i.e.*, five justices ruled for the policyholder, two ruled for Auto Owners. But this hurts Auto-Owners for two reasons. First, Alabama law requires that ambiguous policy terms "be construed most strongly against the insurance company that drafted and issued the policy." *Cincinnati Ins. Co.*, 641 So. 2d at 249. Second, the Kentucky supreme court decided *Comely* more than a year before the Anniston water main burst. So Auto-Owners was on notice that a reasonable person (and reasonable jurists) could read its "water" exclusion provision not to apply to damage caused by a burst water main. That Auto-Owners failed to address this known issue cuts against Auto-Owners, not its policyholders. *See generally, Sullivan*, 513 So.2d

at 994 ("Further, this Court has ruled that exceptions to coverage must be interpreted as narrowly as possible to provide the maximum coverage available.").

So Section B.1(g)(1) does not exclude the damage suffered by United Way.

**B. Section B.1(g)(4): Water under the ground, regardless of cause**

Auto-Owners' secondary argument is that Section B.1(g)(4) excludes United Way's damage. At the time of the incident, that section read:

> 1. We will not pay for loss of damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes currently or in any sequence to the loss.
>
> g. Water
>
> **(4) Water under the ground surface pressing on, or flowing or seeping through**:
>
> (a) Foundations, walls, floors or paved surfaces;
> (b) Basements, whether paved or not; or
> (c) **Doors, windows, or other openings**.

Doc. 1-1 at 31 (emphasis added). Auto-Owners argues that because the water main was underground, the water that escaped from it "necessarily is water from below the ground which seeped or leaked through United Way's building." Doc. 17 at 17.

But, the policy plainly requires that the water be "under the ground surface" when it is "pressing on, or flowing or seeping through" the policyholder's doors, windows, or other openings—not at *any* point in the past.

In its complaint, Auto-Owners pleads that, upon exiting the ruptured water main, the water "traveled across United Way's parking lot and ponded up against the back wall of the United Way building which forced the water into the back walkway door and garage door." Doc. 1, ¶8. In other words, Auto-Owners pleaded that the water was above the ground surface (and above a layer of pavement) when it entered United Way's property—hence Auto-Owners' "surface water" argument.

Because water flowing across a parking lot is not water "under the ground surface," Auto-Owners fails to plead a claim under B.1(g)(4) that could entitle it to relief, and B.1.(g)(4) does not exclude United Way's claim.

## **CONCLUSION**

Paragraphs B.1g(1) and B.1g(4) of the policy do not exclude United Way's claim. So United Way's motion for a judgment on the pleadings (doc. 13) is due to be **GRANTED**, and Auto-Owners' motion for a judgment on the pleadings (doc. 16) is due to be **DENIED**. *See* Fed. R. Civ. P. 12(c).

Auto-Owners only seeks declaratory judgment in its complaint (doc. 1), so its case is due to be **DISMISSED WITH PREJUDICE**. United Way, however, has also filed claims for breach of contract and bad faith. Doc. 6 at 8-14. Neither party sought judgment on these claims, so the case will proceed on these claims.

The court will enter separate orders that carry out this conclusion.

**DONE** on October 20, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE